n.p.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HARLIS WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 11 C 8456 |
| v. | ) |
| | ) Judge Ruben Castillo |
| ILLINOIS DEPARTMENT OF | ) |
| CHILDREN AND FAMILY | ) |
| SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Harlis Woods brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Illinois Department of Children and Family Services ("IDCFS"), the director of IDCFS in August of 1991, IDCFS Caseworker Margaret Cartwright, Lutheran Child and Family Services of Illinois, Inc. ("LCFS"), the director of LCFS in August of 1991, Lutherbrook Children's Center ("Lutherbrook"), the director of Lutherbrook in August of 1991, an unknown number of Lutherbrook employees, and the manager of Stream Cottage of Lutherbrook in August of 1991, collectively "Defendants." (R. 1, Compl.) Presently before the Court is Woods' motion to reconsider the Court's previous order dismissing Woods' complaint as time-barred. (R. 21, Pl.'s Mot.) For the reasons stated below, Woods' motion is denied.

## FACTS

Woods was born on August 23, 1983. (R. 1, Compl., Ex. 3.)[1] In March of 1991, IDCFS removed Woods from the home of his biological parents. (R. 1, Compl. ¶ 16.) After an

---

[1] When considering a motion to dismiss, the Court looks to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs. *Thompson v. Ill. Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

evaluation at Rush Presbyterian St. Luke's Medical Center, IDCFS placed Woods at Lutherbrook, a residential treatment center, in August 1991. (*Id.* ¶ 17.) At that time, LCFS was responsible for carrying out the functions and operations of Lutherbrook. (*Id.* ¶ 9.) According to Woods, prior to his placement at Lutherbrook, LCFS had received numerous reports of sexually inappropriate behavior between residents at Lutherbrook due to a lack of staff supervision. (*Id.* ¶ 18.) Despite these reports, Defendants placed Woods at Lutherbrook. (*Id.* ¶ 19.)

In October 1991, when Woods was eight years old, "it was discovered" that he had been sexually abused on several occasions by a thirteen-year old. (*Id.* ¶ 21.) A court ordered Woods removed from Lutherbrook and placed in a hospital for evaluation of sexual abuse that same month. (R. 1, Compl., Ex. 7.) During the next several years, Woods was moved through various placements, but he never received counseling for the abuse he suffered at Lutherbrook (R. 1, Compl. ¶ 23.)

In 2004, at the age 21, Woods discovered that the abuse at Lutherbrook had injured him psychologically. (*Id.* ¶ 24.) This psychological harm manifested in sexual violence, and Woods is presently serving a sentence for aggravated criminal sexual assault. (*Id.*)

## PROCEDURAL HISTORY

Woods filed a *pro se* complaint on November 21, 2011. (R.1, Compl.) In his complaint, Woods brings one claim pursuant to Section 1983 alleging that Defendants violated his rights under the Fifth and Fourteenth Amendments by failing to protect him from sexual abuse while in state custody. (*Id.* ¶¶ 25-35.) On November 30, 2011, the Court dismissed Woods' complaint without prejudice for failure to state a timely federal cause of action against Defendants, and

appointed counsel to represent Woods and file an amended complaint or motion for reconsideration. (R. 6, Min. Entry; R. 10, Min. Entry; R. 15, Min. Entry.)

On March 23, 2012, Woods filed a motion to reconsider the November 30, 2011 dismissal order. (R. 21, Pl.'s Mot.) Woods argues that his suit is timely because the appropriate statute of limitations in this case is the twenty-year statute of limitations set forth in the Illinois Childhood Sexual Abuse Act ("CSAA"), 735 Ill. Comp. Stat. 5/13-202.2. (*Id.* ¶ 2.) On April 26, 2012, IDCFS filed a response in opposition to Woods' motion. (R. 35, IDCFS' Resp.) That same day, LCFS filed a motion to dismiss Woods' complaint with prejudice, which the Court treats as a response to Woods' motion to reconsider. (R. 31, LCFS' Mot.; R. 38, Min. Entry.) Defendants argue that Woods' case is time-barred because Illinois' two-year personal injury statute of limitations, 735 Ill. Comp. Stat. 5/13-202, is the applicable statute of limitations in this case. (R. 32, LCFS' Mem. at 2; R. 35, IDCFS' Resp. at 3.)[2]

## LEGAL STANDARD

Whether to grant a motion for reconsideration is a matter squarely within the Court's discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citation omitted). Typically, the Court will not reconsider a prior order unless the movant presents newly discovered evidence, establishes a manifest error of law or fact, or demonstrates that the Court has "patently misunderstood" its position. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). In a prior order, however, the Court indicated

---

[2] IDCFS also argues that the Eleventh Amendment bars Woods' claim against IDCFS. This argument, however, is put forth in a footnote and dealt with only cursorily. Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived. *Goren v. New Vision Int'l*, 156 F.3d 721, 726 n.2 (7th Cir. 1998).

3

that it would revisit the decision dismissing Wood's complaint as time-barred. (R. 15, Min. Entry.)

Woods' motion requests that the Court reconsider its order dismissing his complaint as untimely. A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir.2009). In ruling on a motion to dismiss, the Court construes the complaint "in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and draw[ing] all inferences in her favor." *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

A plaintiff's failure to timely file a complaint under the governing statute of limitations is an affirmative defense; as such, it need not be anticipated by the complaint in order to survive a motion to dismiss. *Indep. Trust Corp. v. Steward Inf. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). However, when a complaint sets forth "everything necessary to satisfy the affirmative defense" and plainly reveals that an action is untimely, dismissal under Rule 12(b)(6) is appropriate. *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) (citations omitted) ("[I]f

it is plain from the complaint that the [statute of limitations] defense is indeed a bar to the suit dismissal is proper without further pleading.").

## ANALYSIS

Whether Woods' claim is time-barred turns on which statute of limitations—the Illinois CSAA statute of limitations or Illinois' general personal injury statute of limitations—applies to this Section 1983 action. Woods alleges that he "discovered" the injury caused by the sexual abuse he suffered as a child at some point in 2004. (R. 1, Compl. ¶ 24.) Based on this timeline, the parties agree that Woods' claim accrued and the relevant statute of limitations started running that same year. (R. 22, Pl.'s Mem. at 5); *see Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (noting that a Section 1983 claim accrues on the date when the plaintiff "knows or should know" that her rights have been violated). Accordingly, because Woods filed his complaint in 2011, if the two-year personal injury statute of limitations applies to his claim, it is time-barred. If, on the other hand, the twenty-year CSAA statute of limitations applies, his claim is timely.

Congress failed to specify a statute of limitations for civil rights claims under Section 1983. *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). Instead, in 42 U.S.C. § 1988 ("Section 1988"), Congress directed courts to look to state law. *Id.* Specifically, courts look to the limitations period for personal injury actions in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted); *Ray*, 662 F.3d at 772-73. Under the relevant personal injury statute of limitations in Illinois, this period is two years. 735 Ill. Comp. Stat. § 5/13-202; *Ray*, 662 F.3d at 773. Woods does not dispute that this two-year statute of limitation "applies to the vast majority of Section 1983 claims." (R. 39, Pl.'s Reply at 1.) Nevertheless, he argues that the application of the two-year limitations period to claims premised

5

on childhood sexual abuse claims "would be inconsistent with federal interests" and that the Court should instead apply the twenty-year statute of limitations under the CSAA. (*Id.*)

Addressing Woods' argument, and understanding why it ultimately fails, requires a brief discussion of the Supreme Court's evolving treatment of the issue of how to determine the applicable statute of limitations in Section 1983 actions. In *Burnett v. Grattan*, the plaintiff brought an employment discrimination suit under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. 468 U.S 42, 44 (1984). In addressing what statute of limitations applied to the plaintiff's claims, the Supreme Court noted that Section 1988 instructs courts to follow a three-step process to borrow an appropriate rule of decision that is not otherwise provided for in the Reconstruction Civil Rights Acts:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Id.* at 47-48 (1984) (quoting 42 U.S.C. § 1988) (internal citations omitted). After concluding that no federal law provides an appropriate limitations period, for claims brought under the Civil Rights Acts, the Court proceeded to determine "which of a set of arguably relevant state statues of limitations" is the "most appropriate" one. *Id.* at 49 (citation omitted). The Court explained that the "appropriate" state statute of limitations is the "state law of limitations governing an analogous cause of action." *Id.* A state law is not "appropriate," however, "if it fails to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts." *Id.* at 50. The Court accordingly rejected the

6

borrowing of a six-month limitations period from a Maryland statute that established a procedure for administrative resolution of employment discrimination complaints for the plaintiff's employment discrimination suit under the Civil Rights Acts, noting, *inter alia*, the practical difficulties of litigating a civil rights case as opposed to invoking administrative remedies. *Id.* at 50-53.

A year later, in *Wilson v. Garcia*, the Supreme Court abandoned the *Burnett* approach for determining the appropriate limitations period for Section 1983 actions in favor of a simple, bright-line rule. 471 U.S. 261, 272-76 (1985). The Court observed that there is "no precise counterpart" to the Section 1983 remedy in state law and that "it is 'the purest coincidence' when state statutes or the common law provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect." *Id.* at 271-72 (citation omitted). As a result, "[a]lmost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." *Id.* at 272-73. Predicating the choice of the correct statute of limitations on an analysis of the particular facts of each Section 1983 claim therefore "inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983." *Id.* at 272. The Court accordingly concluded that Section 1988 requires "a simple, broad characterization of all § 1983 claims" and the selection, in each state, of "the one most appropriate statute of limitations" for all Section 1983 claims. *Id.* at 272-75. Finding that Section 1983 claims "are best characterized as personal injury actions," the Court held that the forum state's personal injury statute is the most "appropriate" statute of limitations for all actions under Section 1983. *Id.* at 280.

7

In *Owens v. Okure*, the Supreme Court refined the *Wilson* rule. 488 U.S. 235 (1989). The Court observed that *Wilson* had "not completely eliminated the confusion over the appropriate limitations period for § 1983 claims" because many states had multiple statutes of limitations for personal injury actions. *Id.* at 241. As a result, some courts of appeals had endorsed the use of the limitations period that the forum state assigned to certain enumerated intentional torts. *Id.* Other courts of appeals, by contrast, held that the appropriate limitations period for Section 1983 actions was the forum state's residual statute of limitations. *Id.* at 242. The Supreme Court rejected the intentional torts approach, reasoning that it "would succeed only in transferring the present confusion over the choice among multiple personal injury provisions to a choice among multiple intentional tort provisions." *Id.* at 249-50. Instead, the Court endorsed the adoption of the forum state's general or residual statute of limitations governing personal injury actions for Section 1983 claims. *Id.* at 246. This result, the Court hoped, would fulfill "*Wilson*'s promise" to end the confusion over what statute of limitations to apply in Section 1983 actions. *Id.* at 251.

Woods acknowledges that the general rule set forth in *Owens* that a state's general personal injury statute applies to claims under Section 1983 applies in "most" Section 1983 cases. (R. 39, Pl.'s Reply at 3.) He argues, however, that "an important exception to that general rule" applies in this case and that the twenty-year limitations period in the CSAA is instead the appropriate statute of limitations. (*Id.*) Specifically, Woods points to a footnote in *Owens* and a concurrence in *Burnett* that "allude" to an exception to the general rule that a state's general or residual personal injury statute of limitations applies to a Section 1983 claim where application of that statute would be "inconsistent" with federal interests. *See Burnett*, 468 U.S. at 61

8

(Rehnquist, J., concurring); *Owens*, 488 U.S. at 582 n.13 (citing *Burnett*, 468 U.S. at 61). Additionally, he cites a substantial amount of research indicating that childhood sexual abuse claims are unique in that "childhood sexual abuse victims face burdens over and beyond those of the typical plaintiff, which may cause the victims to delay for years, even decades, before the victims are able to bring a claim." (R. 39, Pl.'s Mem. at 7.)

Given the clear Supreme Court precedent to the contrary, Woods' argument is unavailing. As the preceding discussion shows, the Supreme Court has rejected its prior approach to determining the "appropriate" statute of limitations by identifying the analogous state law tort claim as "manifestly inappropriate." *Owens*, 488 U.S. at 243. Woods' Section 1983 claim is arguably most "analogous" to the state law claim governed by the CSAA's twenty-year statute of limitations, but the Supreme Court has explicitly instructed courts not to engage in that inquiry. *Id.* Additionally, although there may be considerations unique to claims predicated on childhood sexual abuse, the Supreme Court "made clear . . . that § 1983 does not incorporate the policy considerations that underlie specific torts and their statutes of limitations, as it both 'override[s]' and is 'supplementary to any remedy any State might have.'" *Bonneau v. Centennial School Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) (rejecting the plaintiff's argument that state statute of limitations for child abuse applied to claim under Section 1983). In fact, in *Owens*, the Supreme Court listed several state child sexual abuse statutes of limitations among the "multiple statutes of limitations governing intentional torts" that courts were directed to disregard in favor of the bright-line rule established in *Owens*. *See Owens*, 488 U.S. at 244 n.8; *see also Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (rejecting the plaintiff's argument that the six-year state statute of limitations for sexual assault against a child applied to the plaintiff's Section

9

1983 claim instead of the state's two-year residual personal injury statute of limitations). The Court declines to ignore the Supreme Court precedent expressly rejecting the approach upon which Woods' argument relies.

Woods' argument also fails to persuade the Court that applying the two-year general personal injury statute of limitations to cases involving childhood sexual abuse is "inconsistent with federal interests." As mentioned above, the Supreme Court in *Burnett* stated that a limitations period is not "appropriate" if it is not responsive to the practicalities of litigating federal civil rights claims and fails to take into account "policies that are analogous to the goals of the Civil Rights Acts." *Burnett*, 468 U.S. at 50. In his concurrence in *Burnett*, Justice Rehnquist observed that federal courts are "free to disregard otherwise applicable state statutes of limitations" if they are "inconsistent with the Constitution and laws of the United States." *Id.* at 60 (quoting 42 U.S.C. § 1988). He explained that a state law is "inconsistent" with federal law if it "discriminates against federal claims," or "fails to afford a reasonable time to the federal claimant." *Id.* at 60-61. Here, Woods argues that given the unique circumstances involving childhood sexual abuse, applying "such a short statute of limitations would be tantamount to closing the door to the federal courthouse" on victims "who will find it difficult if not impossible to bring such claims for years and years after they become aware of their injuries." (R. 39, Pl.'s Reply at 11-12.) He contends that this is contrary to the "policies underlying § 1983," which include "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." (*Id.* (quoting *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978)).

10

The Court is sympathetic to Woods' argument, but once again, Supreme Court and Seventh Circuit precedent precludes the Court from disposing of the two-year statute of limitations as "inconsistent with federal interests." First, in abandoning the claim-specific approach to determining the "appropriate" statute of limitations, the Supreme Court recognized that "the legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations, for scarce resources must be dissipated by useless litigation on collateral matters." *Wilson*, 471 U.S. at 275. Thus, "federal interests in uniformity, certainty, and the minimization of unnecessary litigation" all supported the conclusion that Section 1988 can be "fairly construed as a directive to select, in each State, the *one* most appropriate statute of limitations for *all* § 1983 claims." *Id.* (emphasis added); *see also Kalimara v. Ill. Dept. of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989) (per curiam) ("[In *Owens v. Okure*] the Supreme Court reaffirmed its holding in *Wilson* and stressed that all section 1983 actions are to be governed by a single statute of limitations relating to personal injury in general, rather than by a statute of limitations limited to enumerated torts."). For claims arising in Illinois, the Seventh Circuit has made clear that the *one* "most appropriate" statute for *all* Section 1983 claims is the two-year general personal injury statute of limitations. *Kalimara*, 879 F.2d at 277; *Ashafa*, 146 F.3d at 462 ("We remain convinced that [735 Ill. Comp. Stat. 5/13-202] is the type of general or residual statute of limitations for personal injury actions described in *Wilson* and *Owens*."); *see also Doe v. Bd. of Educ. of Hononegah Comm. High School*, 833 F. Supp. 1366, 1375 n.4 (N.D. Ill. 1993) (noting that "special tolling provision" found in 735 Ill. Comp. Stat. 5/13-202.2 (1993) for claims for childhood sexual abuse did not

11

apply to the plaintiff's Section 1983 claim even though it was "factually premised in part on childhood sexual abuse").

Additionally, Woods has failed to support his claim that the two-year period provided for in the Illinois general personal injury statute of limitations "fails to afford a reasonable time" to bring suit. In support of his argument that the Court should reject the two-year statute of limitations, Woods points to several state legislatures that have significantly lengthened or even abolished statutes of limitations for claims of childhood sexual abuse. (R. 39, Pl.'s Reply at 9-10.) Woods' claim before the Court, however, is not a state-law tort action for sexual abuse, but rather a Section 1983 claim for deprivation of his constitutional rights, and courts have repeatedly stated that two years, or even less, adequately protects the federal interests underlying the Civil Rights statutes. *See, e.g., Sulicz v. Duncanson*, No. 99-2732, 215 F.3d 1330, at *2 (7th Cir. May 25, 2000) (unpublished) ("[A] two-year statute of limitations is sufficient to protect federal interests of compensation and deterrence.") (citation omitted); *McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th Cir. 1991) ("Congress has demonstrated its belief that a one-year period is reasonable in the civil rights context, providing for such a period in 42 U.S.C. § 1986."); *Blake*, 997 F.2d at 751 (rejecting argument that Colorado's two-year statute of limitations is "inconsistent with federal interests" in a Section 1983 case predicated on the alleged sexual assault of a child); *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1484 (11th Cir. 1989) ("No case . . . has held that a one-year limitations period conflicts with the policies behind section 1983 by providing an insufficient period in which to file suit."). Woods has failed to cite any case in which a court has rejected a state's two-year statute of limitations as "inconsistent with federal interests," and the Court declines to do so in this case. Accordingly, because

Illinois' two-year statute of limitations applies to this case and Woods has failed to allege any grounds for the tolling of the statute, despite being offered the opportunity to do so, his Section 1983 claim is time-barred.[3] There are no facts before the Court that show any unfairness in requiring Woods to bring this federal action within two years of when his claim accrued in 2004. Of course, this ruling does not preclude any potential state lawsuit for the serious injuries Woods has alleged.

## CONCLUSION

For the foregoing reasons, Woods' motion to reconsider (R. 21) is DENIED and Woods' complaint is dismissed with prejudice. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Woods. The Court commends Woods' appointed counsel for his able representation.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated:** July 27, 2012

---

[3] Alternatively, Woods requests an evidentiary hearing should the Court decline to hold as a matter of law that application of the two-year statute of limitations is inconsistent with federal interests. (R. 39, Pl.'s Reply at 12.) As there are no factual disputes, and the Court concludes as a matter of law that the two-year statute of limitations applies in this case and is not inconsistent with federal interests, an evidentiary hearing is not warranted.